Amit Agarwal
Cal. Bar # 294269
P.O. Box 10354
Tampa, FL 33679
813-955-3949
ama7386@gmail.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYSHORE PATENTS LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>E.D. BULLARD CO.,<br><br>        Defendant. | Case No. 3:17-cv-03964<br><br>**Memorandum of Points and Authorities in Opposition of Motion to Dismiss or for Judgment on the Pleadings**<br><br>DATE: October 3, 2017<br>TIME: 9:00 a.m.<br>PLACE: Courtroom E, Courtroom of the Honorable Elizabeth D. Laporte, Magistrate Judge |

1 | This motion prematurely presents the fact-intensive issue of whether a product designer would deem top-mounted and bottom-mounted diodes as interchangeable or substantially similar functions/ways/results relating to converting pre-existing headgear into illumination headgear without compromising aesthetics and utility.

**Argument**

**A. Response to Section A.**

The functional identity of the standards governing FRCP 12(c) and 12(b)(6) does not excuse the timing requirement of FRCP 12(c) ("[a]fter the pleadings are closed"). The pleadings here are not closed. No answer has been filed yet. Pursuant to Ninth Circuit law, relief under 12(c) is premature. *See Doe v. U.S.*, 419 F.3d 1058, 1061 (9th Cir. 2005) ("We conclude that Doe's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) before any answer was filed, an issue of first impression in this circuit, was procedurally premature and should have been denied.").

**B. Response to Section B's Preamble.**

| Bullard's Argument | Federal Circuit Precedent |
|---|---|
| "Claim vitiation **precludes** the doctrine of equivalents if application of the doctrine would completely eliminate a claim element." Mot. at 5. | "[Defendant] fundamentally misunderstands the doctrine of claim vitiation. 'Vitiation' is **not** an exception or threshold determination that **forecloses resort to** the doctrine of equivalents, but is instead a legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted. We have repeatedly reaffirmed this proposition." *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1323 (Fed.Cir.2014); *Ring & Pinion Serv. Inc. v. ARB Corp. Ltd.*, 743 F.3d 831, 836 (Fed.Cir.2014); *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1380 (Fed.Cir.2013); *Brilliant Instruments*, 707 F.3d at 1347; *Bush Hog*, 703 F.3d at 1356; *Voda*, 536 F.3d at 1325 n. 5; *U.S. Philips Corp.*, 505 F.3d at 1378–79; *Abbott Labs.*, 473 F.3d at 1212; *DePuy Spine*, 469 F.3d at 1018–19." *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371-72 (Fed. Cir. 2015) |

| **Bullard's Argument** | **Federal Circuit Precedent** |
|---|---|
| "The Federal Circuit has held that vitiation **precludes** the application of the doctrine of equivalents in cases such as the instant dispute where the accused instrumentality contains 'the antithesis of the claimed structure.'" *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006)." <br><br> Mot. at 5. | "Characterizing an element of an accused product as the 'antithesis' of a claimed element is also a conclusion that **should not be used to overlook** the factual analysis required to establish whether the differences between a claimed limitation and an accused structure or step are substantial *vel non*. The determination of equivalence depends not on labels like "vitiation" and "antithesis" but on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 610–12, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) (finding that a welding process that used manganese, a non-alkaline metal, could be equivalent to the claimed "alkaline earth metal," even though an alkaline metal can formally be described as the "antithesis" of a non-alkaline metal)." <br><br> *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015). |

It seems that Bullard interprets *Planet Bingo* as holding that antithetical structures or "opposites" can never be equivalents. Many a defendant has attempted this tired *Planet Bingo* misapplication. The Federal Circuit has stamped out this misapprehension. In *Cadence Pharms., Inc. v. Exela PharmSci, Inc.*, 780 F.3d 1364 (Fed. Cir. 2015), the defendant Exela relied on *Planet Bingo* in precisely the same way as Bullard. Exela noted that *Planet Bingo* held that determining a winning combination **after** a game started could not be equivalent to a claim that recited a "**predetermined**" winning combination." Exela unsuccessfully analogized to its facts, arguing that deoxygenating **after** adding the active ingredient would be the **antithesis** of deoxygenating **before** adding the active ingredient. Because such a substitution would vitiate the claimed limitation, Exela argued that there could be no finding of equivalence. The Federal Circuit rejected this interpretation of *Planet Bingo*:

> Exela's reliance on *Planet Bingo* is misplaced. *Planet Bingo*'s holding was based on a finding that a combination determined before a game was substantially different, **factually**, from a combination determined after the game started. *See*

2

> *Brilliant Instruments, Inc. v. GuideTech*, LLC, 707 F.3d 1342, 1347
> (Fed.Cir.2013) (explaining the rationale for Planet Bingo as "two elements likely
> are not insubstantially different when they are polar opposites"); Deere & Co. v.
> Bush Hog, LLC, 703 F.3d 1349, 1356 (Fed.Cir.2012) (same). Exela's
> understanding of Planet Bingo (Fed.Cir.2006) is also expressly at odds with this
> court's holding in *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d
> 1005 (Fed.Cir.2006), decided just a few weeks before Planet Bingo.
>
> DePuy Spine explained:
>
>> A holding that the doctrine of equivalents cannot be applied to an accused
>> device because it "vitiates" a claim limitation is nothing more than a
>> conclusion that the evidence is such that no reasonable jury could conclude
>> that an element of an accused device is equivalent to an element called for
>> in the claim, or that the theory of equivalence to support the conclusion of
>> infringement otherwise lacks legal sufficiency. 469 F.3d at 1018–19, cited
>> with approval in *Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 n. 5
>> (Fed.Cir.2008); *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d
>> 1371, 1378–79 (Fed.Cir.2007) and *Abbott Labs. v. Andrx Pharm., Inc.*, 473
>> F.3d 1196, 1212 (Fed.Cir.2007).

*Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015) (emphasis).

The key word there is "factually." As *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349 (Fed. Cir. 2012), one of Defendant's cited cases, explains:

> "Vitiation" is not an exception to the doctrine of equivalents, but instead a legal
> determination that "the evidence is such that no reasonable jury could determine two
> elements to be equivalent." The proper inquiry for the court is to apply the doctrine of
> equivalents, asking whether an asserted equivalent represents an "insubstantial difference"
> from the claimed element, or "whether the substitute element matches the function, way,
> and result of the claimed element." If no reasonable jury could find equivalence, then the
> court must grant summary judgment of no infringement under the doctrine of
> equivalents."

To be sure, the Federal Circuit <u>has</u> stated:

> "[T]wo elements **likely** are not insubstantially different when they are polar opposites . . .
> To succeed on a doctrine of equivalents theory, the patentee must demonstrate
> equivalence under one of these two tests. This will be **more difficult** when the accused
> structure has an element that is the opposite of the claimed element, **especially where the
> specification or prosecution history highlights the differences**. If the claimed and
> accused elements are recognized by those of skill in the art to be opposing ways of doing
> something, they are **likely** not insubstantially different.

3

*Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347–48 (Fed. Cir. 2013)

There is no conceivable reason for the Federal Circuit to use such nuanced qualifiers, highlighted in red above, if there exists a blanket rule precluding reliance on the doctrine of equivalents where the accused structure is the opposite of the claimed limitation. There is even less reason to think this way where the Federal Circuit only recently characterized the seminal doctrine of equivalents Supreme Court case as follows:

> *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 610–12, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) (finding that a welding process that used manganese, a non-alkaline metal, could be equivalent to the claimed "alkaline earth metal," <span style="color:red">even though an alkaline metal can formally be described as the "antithesis" of a non-alkaline metal</span>)."

*Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015).

In sum, this Court should not entertain Defendant's invitation to bypass requisite fact findings, for example, about whether a product designer would regard top-mounted and bottom-mounted diodes as interchangeable, what function is served by mounting the diodes at the bottom surface of the brim, whether that function is satisfied by mounting them atop the brim, what way, what result, etc. Common sense cannot enable this Court to answer these questions without the requisite particularized testimony on these subjects on the mere basis that the word "top" is the opposite of the word "bottom."

**1. Response to Section B(1).**

Defendant references "the Federal Circuit's prohibition against applying the doctrine of equivalents to accused products that are the exact opposite of the claimed limitation." Dkt. No. 8 at 6 (hereinafter "Mot."). There is no such prohibition. This is just a stronger form of the wrong argument in Section B's preamble. Thus, it is even more wrong.

- *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1372 (Fed. Cir. 2015)
    - The determination of equivalence ***depends not on labels like "vitiation" and "antithesis"*** but on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure. See Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 610–12, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) (finding that a welding process that used manganese, a non-alkaline metal,

could be equivalent to the claimed "alkaline earth metal," *even though an alkaline metal can formally be described as the "antithesis" of a non-alkaline metal*).

- *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347–48 (Fed. Cir. 2013)
    - To succeed on a doctrine of equivalents theory, the patentee must demonstrate equivalence under one of these two tests. This will be *more difficult when the accused structure has an element that is the opposite of the claimed element, especially where the specification or prosecution history highlights the differences*. If the claimed and accused elements are recognized by those of skill in the art to be opposing ways of doing something, they are *likely* not insubstantially different.

Again, if there is a so-called blanket prohibition, why is the Federal Circuit using language like "more difficult . . . especially where the specification or prosecution history highlights the differences . . . likely not insubstantially different" if there is such a prohibition." Here, the specification *and* prosecution history are silent about any potential difference between top-mounted versus bottom-mounted diodes.

Defendant next argues—in one line—"The difference between 'bottom' and 'top' is a substantial one." Yes. If you put the two <u>words</u> "bottom" and "top" in respective boxes and blast them into outer space, they are as different as two words can get. Yes, they are opposites of each other. Yes, everybody involved here—law clerks, the Court, the attorneys—has survived the second grade and thankfully knows that the word "bottom" means the exact opposite of "top."

Respectfully, we are not playing some kind of elementary-school word game contest.

Putting aside the impropriety of a blanket prohibition on applying the doctrine of equivalents to opposite words, it is curious that Defendant quantized[1] the singular adjective "bottom" and "top" for a self-serving (albeit misguided) antithetical-thus-non-equivalent argument. The patent claim does not cover the *concepts* of "bottom" and "top" for *everything* in Westeros. No person having ordinary skill in the art would read the adjective "bottom," divorce it of all context, and undertake the comparison to "top" in any manner other than comparing

---

[1] *See Lemley*, Quantum Patent Mechanics, Lewis & Clerk L. Rev. Vol. 9, p. 29 (2005) (examining size of textual element from the claim language chosen as the *claim limitation* and various implications).

5

bottom-mounted diodes to top-mounted diodes in the context of the claimed invention.

What sort of analysis makes sense here? Violating the Federal Circuit's warnings against (i) issuing decisions based on labels like "antithesis," (ii) short-circuiting the requisite factual inquiry, and (iii) posing a rhetorical question like "is 'bottom' the opposite of 'top'" with zero treatment of the surrounding claim language? Tellingly, these questions are entirely untethered to either of the two common law tests developed for the equivalents analysis: (i) the function-way-result test; and (ii) the insubstantial differences test. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) ("[A]s we have explained, "saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests.").

Scattered in this section of Defendant's memo (Sec. B(1)) are arguments regarding (i) the public notice functions of the statutory claiming requirement; (ii) the patentee's failure to seize a clear opportunity to claim LEDs mounted on the top surface of the brim; and (iii) Bullard's entitlement to rely on the recited claim language to plan its own business activities. Bullard is not the first defendant to make these arguments.

The Supreme Court weighed competing policy considerations surrounding the doctrine of equivalents over a half century ago in *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950):

> [T]o permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system.

These policy considerations ***prevailed*** over perfectly legitimate policy considerations

6

articulated by dissenting Justice Black and Justice Douglas:

> R.S. s 4888, as amended, 35 U.S.C. s 33, 35 U.S.C.A. s 33, provides that an applicant 'shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery.' We have held in this very case that this statute precludes invoking the specifications to alter a claim free from ambiguous language, since 'it is the claim which measures the grant *614 to the patentee.'2 Graver Mfg. Co. v. Linde Co., 336 U.S. 271, 277, 69 S.Ct. 535, 538, 93 L.Ed. 672. What is not specifically claimed is dedicated to the public. See, e.g., Miller v. Brass Co., 104 U.S. 350, 352, 26 L.Ed. 783. For the function of claims under R.S. s 4888, as we have frequently reiterated, is to exclude from the patent monopoly field all that is not specifically claimed, whatever may appear in the specifications. See, e.g., Marconi Wireless Co. v. United States, 320 U.S. 1, 23, 63 S.Ct. 1393, 1403, 87 L.Ed. 1731, and cases there cited. Today the Court tacitly rejects those cases. It departs from the underlying principle which, as the Court pointed out in White v. Dunbar, 119 U.S. 47, 51, 7 S.Ct. 72, 74, 30 L.Ed. 303, forbids treating a patent claim 'like a nose of wax, which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from, what its words express. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.' Giving this patentee the benefit of a grant that it did not precisely claim is no less 'unjust to the public' and no less an evasion of R.S. s 4888 merely because done in the name of the 'doctrine of equivalents.'

In 1997, the Supreme Court recognized the all-elements rule and the corollary vitiation doctrine *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). On the policy point, Justice Thomas writing for the majority had this to say, "Congress can legislate the doctrine of equivalents out of existence any time it chooses. The various policy arguments now made by both sides are thus best addressed to Congress, not this Court. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28, 117 S. Ct. 1040, 1048, 137 L. Ed. 2d 146 (1997).

Finally, Defendant states, "Because no reasonable jury could conclude that "top" is equivalent to "bottom," the Court should grant Bullard's motion and enter judgment of non-infringement under the doctrine of equivalents." Defendant's *entire* reasoning is based on the "opposite" status of the words "top" and "bottom." Plaintiff bears a burden to provide particularized testimony and linking argument as to the insubstantiality of the differences between the claimed bottom-mounted diodes and the accused top-mounted diodes. Plaintiff cannot provide

7

generalized testimony to this effect. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Defendant seeks to preempt the entire fact-finding process based on the label of "antithesis" for the words "top" and "bottom." We are truly escaping orbit when we do not even *acknowledge* what the Federal Circuit did just last year. *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016) ("[A]s we have explained, "saying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests.").

### 2. Response to Section B(2) of Defendant's Argument

Here, Defendant cites some prior art utilizing lights within the crown of the headgear. The claim limitation at issue was not amended to overcome any rejections. There were no arguments either. So there is no amendment- or argument-based *estoppel*. Defendant's entire argument is riddled with speculation about what the patent examiner would have done had he been presented with a claim including the limitation LEDs "mounted on the top surface of the brim." This speculation makes no sense. During the prosecution of the patent-in-suit, the patent examiner *cited* Pat. 5,741,060 (Johnson) which included light sources mounted on the **bottom** surface of the brim. Why would the same patent examiner allow a claim reciting bottom-mounted diodes *over* the Johnson patent which actually has bottom-mounted lights, but all of the sudden reject a hypothetical claim reciting top-mounted diodes based on prior art with *crown* lights? Fig. 1 (Pat. 5,741,060). Defendant is free to mount an ensnarement or obviousness defense during its invalidity case.

With *zero* citation to any legal doctrine limiting the doctrine of equivalents based on statements made during a Notice of Allowance, Defendant makes a tired argument rejected by the Federal Circuit.

*Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005):

8

3:17-cv-03964
Plaintiff's Opp. to Def.'s MTD

> [A]n applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a "clear and unmistakable disavowal" of claim scope. *See 3M Innovative Props.,* 350 F.3d at 1373–74 (" 'Prosecution history ... cannot be used to limit the scope of a claim unless the *applicant* took a position before the PTO.' *Schwing GmbH v. Putzmeister Aktiengesellschaft,* 305 F.3d 1318, 1324–25 (Fed.Cir.2002) (emphasis added). An applicant's silence in response to an examiner's characterization of a claim does not reflect the applicant's clear and unmistakable acquiescence to that characterization if the claim is eventually allowed on grounds unrelated to the examiner's unrebutted characterization."). After all, the applicant has disavowed nothing. Procter & Gamble concedes that the law precludes drawing inferences from an applicant's decision to decline comment on an Examiner's Statement of Reasons for Allowance, yet argues that Mr. Salazar should be bound by "the message he sent to the public" by his silence.

Finally, contrary to Defndant's position that Plaintiff is attempting to *broaden* claim scope, it is notable that the doctrine of equivalents does not *broaden* claim scope. "Because the Patent Office examines claims for obvious variations over the prior art, the Patent Office effectively examines claims for insubstantial changes, and therefore permitting exclusionary rights to extend to equivalents of the *individual* literal limitations of the claimed invention, but not to an overall equivalence of the claimed invention, does not expand the scope of the allowed claim." § 13:4.Doctrine does not expand the scope of a claim, 2 Annotated Patent Digest § 13:4 *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1109, 40 U.S.P.Q.2d 1602 (Fed. Cir. 1996) ("[I]t is incorrect to refer to a claim as being expanded or enlarged when infringement is found under the doctrine of equivalents.").

### 3. Response to Section B(3) of Defendant's Argument

Defendant states, "where the patent document expressly identifies a role for a claim limitation, the doctrine of equivalents cannot be used to capture subject matter that does not substantially fulfill that role." Mot. at 9. That statement in the cited case, *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1357 (Fed. Cir. 1999) was made in the context of the two standard *tests* of equivalents articulated in *Warner-Jenkinson*. The very next line in that case is telling, "*See Warner–Jenkinson*, 520 U.S. at 40, 117 S.Ct. 1040, 41 USPQ2d at 1875 ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as

9

to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claim [ ] element."); *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563, 1574, 40 USPQ2d 1481, 1489 (Fed.Cir.1996) (holding that disputed claim limitation, read in light of the written description, requires a function not performed by the accused device). *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1367 (Fed. Cir. 1999).

Defendant, incredibly, disregards the *sole* portion of the specification that has anything specific to *mounting* of diodes—Pat. 7,086,749 at 7:44-8:3, Fig. 8. That section specifically defines the function of mounting the diodes on the bottom of the brim—"This method of manufacture allows conversion of a wide variety of pre-existing headgear to illumination headgear 800." *Id.* at 7:47-49. Conveniently disregarding this sole on-point portion of the specification, Defendant excitedly designates the *function* of mounting diodes on the bottom of the brim to one advantage obtainable via one of over two dozen embodiments discussed in the specification relating to finding *animals in the dark* which does not even mention mounting. This is a frivolous misidentification of the function of the claim limitation at issue.

Tellingly, Defendant saved its worst argument for last.

### **Conclusion**

Whether a product designer would regard bottom-mounted diodes and top-mounted diodes as interchangeable or substantially different in their function/way/result is a factual inquiry inappropriate for resolution at this stage. For the foregoing reasons, this motion should be denied.

Dated: Aug. 8, 2017

/s/ Amit Agarwal
Amit Agarwal
California State Bar # 294269
P.O. Box 10354
Tampa, FL 33679
Telephone: (813)-955-3949
Email: ama7386@gmail.com